# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| STEVEN MUSGRAVE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Case No. 2:20-cv-00278 |
| | § | |
| MIKE SHAW C.C. MOTORS, INC. | § | |
| d/b/a MIKE SHAW KIA, | § | **JURY TRIAL DEMANDED** |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff Steven Musgrave files this Original Complaint against Defendant Mike Shaw C.C. Motors, Inc. d/b/a Mike Shaw Kia, and shows as follows:

### PARTIES

1. The plaintiff is Steven Musgrave. He is an individual and resident of Nueces County, Texas.

2. The defendant is Mike Shaw C.C. Motors, Inc. d/b/a Mike Shaw Kia ("the defendant"). It is a business entity located in and doing business in Corpus Christi, Nueces County, Texas. The defendant may be served with process by personal service on its registered agent for service, Mr. Stephen Bressler, 1020 N.E. Loop 410, Suite 500, San

Antonio, Texas 78209.

## JURISDICTION

3.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331.  It presents a federal question because it arises under 29 U.S.C. § 2601, a federal statute.

## VENUE

4.      Pursuant to 29 U.S.C. § 1132(e)(2), venue for this suit is proper in this district and division because it is the district and division where the alleged events occurred.

## FACTS

5.      The plaintiff was employed by the defendant in Corpus Christi, Texas, from on or about May 23, 2017, until on or about July 8, 2020.  He began his employment at Mike Shaw Toyota as a salesman, working in that role until about August 2017 when he became Finance Manager.  He worked in that role until October 2019 when be became Finance Manager at Mike Shaw Kia.  In April 2020, the defendant returned to Mike Shaw Toyota as a salesman, but then returned to Mike Shaw Kia again on or about June 1, 2020, as Finance Manager.  The plaintiff had no disciplinary history and received only positive performance evaluations.

6.      On or about June 23, 2020, the plaintiff communicated to Ray Lewis during work hours that he was not feeling well, exhibiting symptoms of COVD-19. He was told,

however, to continue working the rest of the day and to get tested the next day.  On June 24, 2020, the plaintiff received a COVID-19 test from Complete Care South.  He was advised by a health care professional to not work for at least one week, while awaiting test results.  The plaintiff communicated this to the defendant.  At that time, he expected to return to work on or about June 29, 2020, so long as the test result was negative.

7. However, on or about June 27, 2020, a child in the plaintiff's home tested positive for COVID-19.  The plaintiff communicated this development to the defendant.  At this time, the defendant instructed the plaintiff to take another COVID-19 test that was a "rapid test," so that he could return to work if the result was negative.  The plaintiff complied and obtained a rapid test on or about June 29, 2020, from Stat Care.  The test result was negative, but the plaintiff was advised by the health care professional at Stat Care that he should self-isolate until July 8, 2020, because of the positive result for a child in the plaintiffs household.  This information was communicated to the plaintiff; and the defendant advised the plaintiff to report to work on July 8, 2020.

8. The plaintiff reported to work on July 8, 2020, as intended.  He worked for about 15 minutes before he was told by the defendant that he was discharged from his employment because of his alleged failure to properly utilize electronic contracts in early June 2020 for one or more car sales.  This was his first notice of any alleged performance issues.  The plaintiff denies violating any policy or procedure of the defendant.

3

9. Indeed, the only development between the last day that the plaintiff worked and the date he returned was his COVID-19 issues. The discharge is unlawful. It is unlawful because the decision is motivated by one or more unlawful factors, including the defendant's non-compliance with the FMLA. The discharge was motivated by the plaintiff's absence from work because he had COVID-19 symptoms, because a child in his household tested positive for COVID-19, and because he was quarantined at home waiting for COVID-19 test results.

10. In discharging him from his employment, the plaintiff was penalized by the defendant for exercising his statutory rights under the EFMLEA and FMLA, respectively.

## CAUSES OF ACTION

### Count 1—FMLA Retaliation

11. The plaintiff incorporates within Count 1 all of the allegations set forth in paragraphs 1-10, *supra*.

12. The defendant is subject to the provisions of The Family and Medical Leave Act of 1993, which allows eligible employees working for covered employers to take temporary leave for medical reasons, for the birth or adoption of a child, and for the care of a spouse, child, or parent who has a serious health condition, without the risk of losing employment. 29 U.S.C. § 2601(b)(1) and (2). The FMLA has two distinct sets of provisions, which together seek to meet the needs of families and employees and to

accommodate the legitimate interests of employers. *See Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999); *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998). The statute prescriptively provides a series of substantive rights. *See id.* The FMLA requires a covered employer to allow an eligible employee up to twelve weeks of unpaid leave if the employee suffers from "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D); *see Chaffin v. John H. Carter Co., Inc.*, 179 F.3d 316, 319 (5th Cir. 1999). When an eligible employee returns from leave taken under the FMLA, the employer must restore the employee to the same position or to "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1); *see Nero*, 167 F.3d at 925.4 The FMLA also contains proscriptions against penalizing an employee for the exercise of FMLA rights. 29 U.S.C. § 2615(a)(1)-(2); *see Chaffin*, 179 F.3d at 319.

13. Further, on March 27, 2020, President Trump signed into law the Coronavirus Aid, Relief, and Economic Security Act, Public Law 116-136 (CARES Act), which amends certain provisions of the EPSLA and the provisions of the FMLA added by the EFMLEA. In general, the FFCRA requires covered employers to provide eligible employees up to two weeks of paid sick leave at full pay, up to a specified cap, when the employee is unable to work because the employee is subject to a Federal, State, or local quarantine or

isolation order related to COVID-19, has been advised by a health care provider to self-quarantine due to concerns related to COVID-19, or is experiencing COVID-19 symptoms and seeking a medical diagnosis.  This same regulatory framework applies to an employee who is caring for a child under the age of 18.  All employees are eligible for this statutory job protection regardless of the length of their employment.

14.     The FMLA's general prohibitions on interference with rights and discrimination, 29 U.S.C. 2615, as well as the FMLA's enforcement provisions, 29 U.S.C. 2617, apply for purposes of the EFMLEA.

15.     Here, the plaintiff is an eligible employee under the Act, and the defendant is a covered employer under the Act.  In accordance with the CARES Act, the plaintiff advised the defendant that he had COVID-19 symptoms, and that, later, a child in his household tested positive for COVID-19.  The plaintiff provided the defendant as much notice as he reasonably could and enough information so that the defendant knew or should have known that he likely was eligible for FMLA leave, pursuant to the Family Medical Leave Act and the CARES Act, respectively.

16.     While several days' leave was expressly granted to the plaintiff by the defendant, he was effectively prevented by the defendant from returning to work as he intended; nor did the defendant offer to restore the plaintiff to an equivalent position after his needed leave and when he was eligible to return; rather it discharged him because of the time he

took away from work to care for himself and an ill child in his household.

17. The defendant's conduct caused damages to the plaintiff. He therefore seeks reinstatement, to recover his past and future economic and non-economic damages from the defendant, his damages for mental anguish, and all other damages provided by law. Because of the nature of the conduct; that is, being willful and intentional, the plaintiff also seeks to recover liquidated damages and/or exemplary damages from the defendant, as provided by law. The plaintiff also seeks his costs and attorney's fees, as provided by law.

### PRAYER

18. For these reasons, Plaintiff Steven Musgrave respectfully requests that Defendant Mike Shaw C.C. Motors, Inc. d/b/a Mike Shaw Kia be cited to appear herein and answer, and that upon trial of this matter, have judgment against Defendant for Plaintiff's reinstatement, damages, economic damages, non-economic damages, liquidated damages, mental anguish damages, exemplary damages, attorney's fees, costs, pre-judgment interest, post-judgment interest, and for such other relief, at law or in equity, to which Plaintiff may be justly entitled.

    Respectfully submitted,

    s/Jon D. Brooks
    Jon D. Brooks
    Attorney-in-Charge
    Federal ID 24936

State Bar No. 24004563
400 Mann Street, Suite 1001
Corpus Christi, Texas 78401
361.885.7710
361.885.7716 (facsimile)
jbrooks@brooksllp.com

**Attorneys for Plaintiff Steven Musgrave**